David D. Garner
Justin Henderson
LEWIS ROCA ROTHGERBER CHRISTIE LLP
Collier Center
201 E. Washington Street, Suite 1200
Phoenix, Arizona 85004-2595
602.262.5335
dgarner@lrrc.com
jhenderson@lrrc.com

Michael O'Neil (*pro hac vice*)
Albert E. Hartmann (*pro hac vice*)
REED SMITH LLP
10 South Wacker Drive
40th Floor
Chicago, IL 60606-7507
312.207.1100
michael.oneil@reedsmith.com
ahartmann@reedsmith.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amanda Mix, *on behalf of herself and all others similarly situated,* | Case No. 2:14-cv-02357- PHX-GMS |
| Plaintiff, | **STERLING INFOSYSTEMS, INC.'S RULE 12 (b)(1) MOTION TO DISMISS COUNT III OF PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT** |
| vs. | |
| Asurion Insurance Services, Inc., and Sterling Infosystems, Inc., | |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...........................................................................................1

II.   BACKGROUND ............................................................................................2

    A.    Section 1681b(b)(3) Of The FCRA Requires Specific Procedures
        Before Hiring Decisions Are Made Based On Consumer Reports. ....................2

        1.    Section 1681b(b)(3) allows applicants to dispute inaccurate
             information in reports before final employment decisions are
             made. ............................................................................................3

        2.    The legislative history of Section 1681b(b)(3) confirms that
             Congress created a procedural mechanism to allow disputes
             of inaccurate information. .............................................................3

    B.    Plaintiff's Criminal Record. ...............................................................4

    C.    Plaintiff's Application To Asurion. .....................................................4

    D.    Plaintiff's Applications To Other Employers And Eventual Dispute
        Of The Pending Criminal Charges. .....................................................5

    E.    Plaintiff's Motion To Certify Section 1681b(b)(3) Class Claims
        Against Sterling. ...............................................................................6

III.  ARGUMENT ................................................................................................7

    A.    Legal Standard For Dismissing Plaintiff's Claims For Lack Of Article
        III Standing Under Rule 12(b)(1). .....................................................7

    B.    This Court Must Evaluate Plaintiff's Standing Before Ruling On Her
        Rule 23 Motion For Class Certification. ............................................8

    C.    Under *Spokeo*, Plaintiff Must Prove A Concrete And Particularized
        Injury-In-Fact Caused By The Alleged FCRA Violation To Establish
        Her Standing. ...................................................................................9

    D.    Plaintiff Did Not Suffer An Injury-In-Fact Caused By The Text Of
        The Notice Sent By Sterling Because She Never Read That Notice. ...................10

    E.    Plaintiff Did Not Suffer An Injury-In-Fact Caused By The Claimed
        Procedural Violation Because She Could Not Have Disputed The
        Accurate Information Reported To Asurion By Sterling. ......................................11

IV.   CONCLUSION ...........................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Augustine v. United States,*
    704 F.2d 1074 (9th Cir. 1983)............................................................................8

*Beverly v. Wal-Mart Stores, Inc.,*
    No. 3:07CV469, 2008 WL 149032 (E.D. Va. Jan. 11, 2008)........................................3

*Cariajano v. Occidental Petroleum Corp.,*
    643 F.3d 1216 (9th Cir. 2011)............................................................................8

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ...................................................................................8, 9

*Goode v. LexisNexis Risk & Inf. Analytics Grp., Inc.,*
    848 F. Supp. 2d 532 (E.D. Pa. 2012)....................................................................3

*Johnson v. ADP Screening and Selection Servs.,*
    768 F. Supp. 2d 979 (D. Minn. 2011) ..................................................................3

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) .................................................................................8, 10

*Magallon v. Robert Half Int'l, Inc.,*
    No. 6:13-cv-01478-AA, 2015 WL 8773898 (D. Or. Nov. 10, 2015) .........................12

*Mix v. JPMorgan Chase Bank NA,*
    No. 2:15-cv-01102 (D. Ariz.)...........................................................................6

*Mix v. Move Incorporated,*
    No. 2:15-cv-00370 (D. Ariz.)...........................................................................6

*Obabueki v. Int'l Bus. Mach. Corp.,*
    145 F. Supp. 2d 371 (S.D.N.Y 2001), *aff'd,* 319 F.3d 87 (2d Cir. 2003) ......................3

*Orient v. Linus Pauling Inst. of Science and Med.,*
    936 F.Supp. 704 (D. Ariz. 1996) .......................................................................7

*Robins v. Spokeo, Inc.,*
    742 F.3d 409 (9th Cir. 2014)............................................................................8

*Safe Air for Everyone v. Meyer,*
    373 F.3d 1035 (9th Cir. 2004)...........................................................................8

STERLING INFOSYSTEMS, INC.'S RULE 12(b)(1) MOTION TO DISMISS COUNT III OF
PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

*Simon v. E. Ky. Welfare Rights Org.,*
    426 U.S. 26 (1976) ........................................................................................... 10

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) ................................................................................ *passim*

*Stock West, Inc. v. Confederated Tribes of Colville Reservation,*
    873 F.2d 1221 (9th Cir. 1989) .............................................................................. 7

*Tourgeman v. Collins Fin. Servs., Inc*
    No. 08-CV-1392 CAB (NLS), 2016 WL 3919633 (S.D. Cal. June 16, 2016). ......................... 11

*Vlasek v. Wal-Mart Stores, Inc.,*
    No. H-0700386, 2008 WL 2937760 (S.D. Tex. July 22, 2008) ...................................... 13

*Warth v. Seldin,*
    422 U.S. 490 (1975) ........................................................................................... 10

*West v. U.S.,*
    No. 13-CV-304-PHX-GMS, 2013 WL 4478930 (D. Ariz. Aug. 21, 2013) ............................. 8

*WildEarth Guardians v. U.S. E.P.A.,*
    759 F.3d 1064 (9th Cir. 2014) .............................................................................. 8

*WildEarth Guardians v. United States Dep't of Agric.,*
    795 F.3d 1148 (9th Cir. 2015) .............................................................................. 7

**Statutes**

15 U.S.C. § 1681 *et seq.* ....................................................................................... 1

15 U.S.C. § 1681b(a) ............................................................................................. 2

15 U.S.C. § 1681b(b)(3)(A) ............................................................................... 3, 10

15 U.S.C. § 1681g(c)(1)(B)(iii) ............................................................................... 3

15 U.S.C. § 1681m(a) ............................................................................................. 2

15 U.S.C. § 1681o ............................................................................................... 13

Fair Debt Collection Practices Act ......................................................................... 11

**Legislative Materials**

H.R. Rep. 103-486 at 40, 1994 WL 164513 (1994) ......................................................... 4

H.R. Rep. 102-692 at 34, 1992 WL 179676 (1992) ......................................................... 4

STERLING INFOSYSTEMS, INC.'S RULE 12(b)(1) MOTION TO DISMISS COUNT III OF
PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

S. Rep. 103-209 at 13, 1993 WL 516162 (1993) ........................................................................4

S. Rep. 104-185 at 33, 1995 WL 747809 (1995) ........................................................................4

STERLING INFOSYSTEMS, INC.'S RULE 12(b)(1) MOTION TO DISMISS COUNT III OF
PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

Defendant Sterling Infosystems, Inc. ("Sterling") hereby moves to dismiss Count III of Plaintiff's Amended Class Action Complaint (ECF 41) pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Further, because this Court must determine its jurisdiction as a threshold matter before addressing other issues, Sterling respectfully submits that this Court should rule on Sterling's Rule 12(b)(1) motion to dismiss before any ruling on Plaintiff's pending Motion for Class Certification and Appointment of Class Counsel Under Rule 23 (ECF 65).

## I.    INTRODUCTION

Plaintiff asserts numerous claims against Sterling under the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").  At the time she filed her suit, the law of the Ninth Circuit did not require Plaintiff to allege any injury-in-fact, other than the claimed FCRA violations, to demonstrate her Article III standing.  However, the United States Supreme Court recently overruled the Ninth Circuit and held in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), that a plaintiff alleging violation of the FCRA must nonetheless satisfy the traditional test for Article III standing, i.e., a concrete and particularized harm caused by the purported FCRA violation.  Based on this change in the law in the Ninth Circuit, Plaintiff's own testimony demonstrates that she lacks standing to pursue her class claims against Sterling.  Therefore, those claims should be dismissed for lack of Article III jurisdiction under Rule 12(b)(1).

By Count II, which is the subject of Plaintiff's Motion for Class Certification, Plaintiff alleges that Sterling violated Section 1681b(b)(3) of the FCRA by purportedly taking "adverse action" against her when she applied to work for Defendant Asurion Insurance Services, Inc. ("Asurion").  Sterling does not make hiring decisions, but instead prepares background reports for employers to use when making their own hiring decisions.  However, under Plaintiff's novel liability theories, Sterling purportedly made final adverse employment decisions relating to her by two (2) separate sets of circumstances; however, Sterling failed to provide her with the "pre-adverse action notice" required by Section 1681b(b)(3) before making those decisions.  By Plaintiff's own admissions, she did not suffer injury-in-fact caused by Sterling's purported violations under either theory of liability.

First, Plaintiff contends that the language of the pre-adverse action notice that Sterling sent

STERLING INFOSYSTEMS, INC.'S RULE 12(b)(1) MOTION TO DISMISS COUNT III OF
PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

on Asurion's behalf suggests that Asurion had already made a final decision not to hire her. Thus, by sending the notice on Asurion's behalf, Sterling somehow made a final adverse employment decision as to Plaintiff. However, because Asurion had already called and emailed Plaintiff to inform her that Asurion decided not to hire her, Plaintiff admitted that she never read the notice sent by Sterling. Therefore, she cannot demonstrate the requisite concrete and particularized injury-in-fact that could provide standing for her to assert a claim under this theory.

Second, Plaintiff claims that Sterling was required to provide her with a pre-adverse action notice before providing Asurion with a report about her that appended a rating to her pending criminal charges. The purpose of the pre-adverse action notice, and the attendant procedures required by the FCRA, is to allow applicants to dispute inaccurate information before final employment decisions are made based on that inaccurate information. However, the criminal record information that Sterling reported about Plaintiff was accurate. Therefore, she could not have disputed it even if she had received the notice she contends Sterling should have sent. Therefore, again by her own admissions, she cannot demonstrate a concrete harm from Sterling's purported FCRA violation under this theory either.

## II.   BACKGROUND

### A.   Section 1681b(b)(3) Of The FCRA Requires Specific Procedures Before Hiring Decisions Are Made Based On Consumer Reports.

The FCRA generally regulates the communication and use of consumer information, or "consumer reports," for a wide range of purposes, e.g., credit, insurance and employment. *See* 15 U.S.C. § 1681b(a). Any time a user of a report takes an "adverse action" with respect to a consumer, that user must send a notice of the action <u>after</u> it occurs. *See id.* § 1681m(a). In addition to this after-the-fact notice, Section 1681b(b)(3) requires that "in using a consumer report for employment purposes, <u>before</u> taking any adverse action based in whole or in part on the report, the person <u>intending to take</u> such adverse action shall provide" notice that adverse action may occur, i.e., a pre-adverse action notice. *Id.* § 1681b(b)(3) (emphasis added).[1]

---

[1] By its opposition to Plaintiff's Rule 23 motion, Sterling demonstrated that it has no duties under Section 1681b(b)(3). (*See, e.g.*, ECF 81 at 5-7.) In any event, even if it did have the claimed duties, Plaintiff's own testimony demonstrates that she has no standing to pursue claims based on a

The pre-adverse action notice must include a copy of the report as well as a summary of the applicant's rights under the FCRA. *See* 15 U.S.C. §§ 1681b(b)(3)(A)(i)-(ii). The required summary includes an explicit discussion of the applicant's FCRA right to dispute any inaccurate information in the report. *See id.* § 1681g(c)(1)(B)(iii). Therefore, applicants are armed with the information needed to correct any inaccuracies in the report that may prevent them from receiving the job.

1.   Section 1681b(b)(3) allows applicants to dispute inaccurate information in reports before final employment decisions are made.

The duty to send the pre-adverse action notice is triggered when the user of a report, i.e., potential employer, makes a conditional decision to not hire an applicant based on FCRA data. At that point, the user must send the notice and essentially put the intended decision on hold for a reasonable period of time. *See Johnson v. ADP Screening and Selection Servs.*, 768 F. Supp. 2d 979, 983 (D. Minn. 2011) (Section 1681b(b)(3) "places an employer in a position where it cannot hire and cannot reject an applicant: it must give notice that it intends to reject him. In other words, it cannot act and must place the application 'on hold.'"). This mandated "hold" allows an applicant to "correct any inaccurate information in the report before any decision or action is commenced." *Beverly v. Wal-Mart Stores, Inc.*, No. 3:07CV469, 2008 WL 149032, at *3 (E.D. Va. Jan. 11, 2008).

The formation of the conditional intent to make an adverse hiring decision is not itself an adverse action. *See Obabueki v. Int'l Bus. Mach. Corp.*, 145 F. Supp. 2d 371, 391 (S.D.N.Y 2001) ("An internal decision to rescind an offer is not an adverse action."), *aff'd*, 319 F.3d 87 (2d Cir. 2003). Instead, as Plaintiff has expressly plead, "an adverse action occurs when the decision is carried out, when it is communicated or actually takes effect." (ECF 41 ¶ 27 (quoting *Goode v. LexisNexis Risk & Inf. Analytics Grp., Inc.*, 848 F. Supp. 2d 532, 540 (E.D. Pa. 2012).)

2.   The legislative history of Section 1681b(b)(3) confirms that Congress created a procedural mechanism to allow disputes of inaccurate information.

Congress added Section 1681b(b)(3) to the FCRA in 1996. Public Law 104-208, § 2403(b), 110 Stat. 3009-430-431 (Sept. 30, 1996). When explaining this provision, the Senate Committee on Banking, Housing and Urban Affairs expressly identified the harm that it sought to prevent,

violation of those duties.

1  i.e., job applicants being unable to dispute inaccurate information in consumer reports before

2  hiring decisions were made.  The Committee was "concerned that the ability of employers to

3  obtain consumer reports on current and prospective employees may unreasonably harm

4  employees if there are <u>errors on those reports</u>."  Therefore, the new provision added procedures

5  requiring employers to provide "a reasonable opportunity to respond to any <u>information that is</u>

6  <u>disputed by the consumer.</u>"  S. Rep. 104-185 at 33, 1995 WL 747809 (1995) (emphasis added); *see*

7  *also* S. Rep. 103-209 at 13, 1993 WL 516162 (1993) (same).  The House Committee on Banking,

8  Finance and Urban Affairs similarly explained that the provision "provide[d] the consumer with a

9  reasonable period to respond to any information in the report that the consumer <u>disputes</u>."  H.R.

10  Rep. 103-486 at 40, 1994 WL 164513 (1994) (emphasis added); *see also* H.R. Rep. 102-692 at 34,

11  1992 WL 179676 (1992) (same).

12  **B.    Plaintiff's Criminal Record.**

13  In June 2014, Plaintiff was charged with ████████████████████████████

14  ████████████████████ (Dep. of Amanda Mix ("Pl. Dep.") 16:16-21, 97:22-99:10 (excerpts and

15  selected exhibits attached as Ex. 1); *see also* Ex. 1(b), at ASURION53.)  Plaintiff admits that she

16  "decided to plead no contest" to the felony charges.  (ECF 65 at 10-11.)  Before doing so, Plaintiff

17  "worked out an agreement with the prosecutor to get the charge expunged from her record."

18  (ECF 65 at 11.) ████████████████████████████████████████████████

19  ████████████████████████████████

20  By that agreement, Plaintiff "pled no contest" and "paid restitution and court costs, [and]

21  performed the community service."  (ECF 65-12 ¶ 6.) ████████████████████████

22  ████████████████████████████████████████████████████████████████

23  ████████████████████████████████

24  **C.    Plaintiff's Application To Asurion.**

25  ████████████████████████████████████ she applied for a job at

26  Asurion (in July 2014).  (ECF 65 at 2.)  Plaintiff knew that Asurion would run a background check

27  on her in connection with her job application. ████████████████████████████████

28  ████████████████████████████ On July 25, 2014, Sterling furnished to Asurion

1  a background report relating to Plaintiff which included the pending felony charges.  (*See* ECF

2  65-2; ECF 81-6.)

3       After reviewing Plaintiff's report, Asurion made a notation within Sterling's system that it

4  intended to deny Plaintiff's employment application based on her criminal record.  (ECF 81-10,

5  Dep. of Emily Edwards-Qalandarova ("Qal. Dep.") 99:7-18; *id.* 139:19-140:2, 147:6-14;

6  212:4-213:19; ECF 81-6; ECF 65-4 at STERLING 177.)  Consistent with its standard procedure,

7  after making its initial decision, Asurion informed one of its recruiters of its decision not to hire

8  Plaintiff.  (ECF 81-10, Qal. Dep. 97:8-98:12.)  Consistent with Asurion's instructions, the recruiter

9  emailed and spoke to Plaintiff to advise her of Asurion's initial determination.  (ECF 41-3; ECF

10  65-12 ¶ 8.)  As she testified, Plaintiff <u>knew</u> that Asurion had decided not to hire her "[w]hen I got

11  either the e-mail or the phone call where they said, Something popped."  (Pl. Dep. 45:22-46:3.)

12       Asurion separately initiated the process that triggers a request to Sterling to send a

13  pre-adverse action notice on Asurion's behalf.  (ECF 81-10, Qal. Dep. 10:1-17; *see also* ECF 81-24,

14  Dep. of Rachel Laferty ("Laf. Dep.") 107:10-25 ("responsibility fell … on Asurion to initiate the

15  request").)  Consistent with Asurion's directions, Sterling mailed to Plaintiff a notice and copy of

16  the report.  (ECF 41-4 (partial copy); ECF 81-6 (complete copy).)  Notably, Plaintiff did not read

17  the pre-adverse action notice when she received it and therefore did not consider it a reflection of

18  a decision not to hire her because "Asurion had already taken their employment offer away from

19  me."  (Pl. Dep. 79:3-20.)

20  ███████████████████████████████████████████████

21  ████████████████████████████████████████████████

22  ███████████████████████████  Notably, had Plaintiff disputed the pending criminal charges

23  and secured a change in the report, Asurion would have reconsidered its decision after reviewing

24  any updated results.  (ECF 81-10, Qal. Dep. 136:16-137:7 (discussing how Asurion would review

25  dispute results and hire candidates who then met hiring criteria).)

26      **D.**   **Plaintiff's Applications To Other Employers And Eventual Dispute Of The
27            Pending Criminal Charges.**

28       After applying for a job with Asurion – but before her pending criminal charges were

expunged – Plaintiff applied for other jobs with other potential employers.  Most relevant, Plaintiff applied to (1) Move, Inc., (2) JPMorgan Chase Bank NA and (3) CaptionCall-194.  (Pl. Dep. 92:5-7; 105:18-21; 105:25-106:9.)[2]



### E.   Plaintiff's Motion To Certify Section 1681b(b)(3) Class Claims Against Sterling.

By her amended complaint, Plaintiff asserted FCRA claims against Sterling in Counts III, IV and V.  By her Rule 23 motion for class certification (ECF 65), Plaintiff only sought to certify class claims for the alleged violations of Section 1681b(b)(3) asserted in Count III.  Plaintiff's class definition (ECF 65 at 11) refers to a single class, but the definition clearly refers to two separate classes (based on the separate theories), i.e., class members (1) whose report contained certain legends, e.g., "Level3" or "Red," <u>or</u> (2) "to whom Sterling mailed, at the request of the client … a pre-adverse action letter." (*Id.* (emphasis added).)

For one putative class, Plaintiff claims that Sterling violated Section 1681b(b)(3) by sending

---

[2]  Plaintiff separately sued two (2) of these potential employers for violation of the same FCRA provision at issue here.  *See Mix v. JPMorgan Chase Bank NA*, No. 2:15-cv-01102 (D. Ariz.); *Mix v. Move Incorporated*, No. 2:15-cv-00370 (D. Ariz.).

STERLING INFOSYSTEMS, INC.'S RULE 12(b)(1) MOTION TO DISMISS COUNT III OF PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

1   applicants "pre-adverse action" notices – not on its own behalf, but on behalf of its clients – that

2   contained some unspecified language indicating a final decision had already been made by the

3   client.  (ECF 65 at 24-25.)  Therefore, Plaintiff argues, Sterling was required to send a letter <u>before</u>

4   it sent the letter.

5       For the other putative class, Plaintiff contends that Sterling's legends, e.g., "Level3" or

6   "Red," to portions of reports for potential employers constitutes a final adverse employment

7   decision.  Therefore, Sterling purportedly violates Section 1681b(b)(3) by not sending pre-adverse

8   action notices before furnishing rated reports to potential employers, thus depriving Plaintiff and

9   absent class members of the opportunity to challenge the reports.  (ECF 65 at 21, 23.)

10      Notably, Sterling provided a substantially identical explanation of Section 1681b(b)(3) as

11  set forth above in its opposition to Plaintiff's motion for class certification.  (ECF 81 at 3-5.)

12  Sterling's recitation of Plaintiff's interactions with Asurion above is also virtually identical to that

13  in the opposition brief.  (ECF 81 at 8-9.)  By her numerous subsequent briefs on the Rule 23

14  motion, Plaintiff did not contest Sterling's recitation of either the relevant law or the relevant facts.

15  **III.   ARGUMENT**

16      Because Plaintiff suffered no concrete injury-in-fact caused by the two alleged violations of

17  15 U.S.C. § 1681b(b)(3) by Sterling, Plaintiff cannot demonstrate, as she now must, her Article III

18  standing to prosecute those claims.  Therefore, Count III of Plaintiffs' Amended Class Action

19  Complaint should be dismissed.  Additionally, because Plaintiff's pending Rule 23 motion seeks

20  leave to prosecute Count III on behalf of putative classes, that motion should also be denied.

21      **A.   Legal Standard For Dismissing Plaintiff's Claims For Lack Of Article III**
22      **Standing Under Rule 12(b)(1).**

23      Plaintiff bears the burden of establishing the existence of this Court's jurisdiction, and

24  there is "a presumption of a lack of jurisdiction until the plaintiff affirmatively proves otherwise."

25  *Orient v. Linus Pauling Inst. of Science and Med.*, 936 F.Supp. 704, 706 (D. Ariz. 1996) (citing *Stock West,*

26  *Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989)); *see also WildEarth*

27  *Guardians v. United States Dep't of Agric.*, 795 F.3d 1148, 1154 (9th Cir. 2015) ("A plaintiff has the

28  burden to establish that it has standing.").  This Court also has an ongoing obligation to determine

whether it possesses Article III jurisdiction.  *See, e.g., DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340-42 (2006) (courts are obligated to assess Article III standing before reaching any other questions); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (plaintiff has continuing burden to prove standing "at the successive stages of the litigation"); *WildEarth Guardians v. U.S. E.P.A.*, 759 F.3d 1064, 1070 (9th Cir. 2014) (courts "have 'an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties'") (internal citations omitted). The standing analysis applies on a claim-by-claim basis.  *See DaimlerChrysler*, 547 U.S. at 352  ("a plaintiff must demonstrate standing for each claim he seeks to press").

"Under Rule 12(b)(1), a defendant may challenge at any time a federal court's jurisdiction to hear the case." *West v. U.S.*, No. 13-CV-304-PHX-GMS, 2013 WL 4478930, at *1 (D. Ariz. Aug. 21, 2013) (Snow, J.); *see also Cariajano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1227 (9th Cir. 2011) (challenges to Article III standing properly brought pursuant to Ruler 12(b)(1)).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a factual challenge, the district court may review evidence beyond the complaint – "and resolve factual disputes where necessary" – without converting the motion to dismiss into a motion for summary judgment. *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983); *Safe Air for Everyone*, 373 F.3d at 1039.  Here, however, the Court need not resolve any factual disputes because Plaintiff's lack of standing is demonstrated by her pleadings, discovery responses and – most notably – her own testimony.

## B.    This Court Must Evaluate Plaintiff's Standing Before Ruling On Her Rule 23 Motion For Class Certification.

At the time the parties briefed Plaintiff's Rule 23 motion, the law in the Ninth Circuit, set forth by *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014), was that Plaintiff's mere assertion of a claim under the FCRA satisfied her burden to establish Article III standing.  Therefore, Sterling did not raise any arguments as to Plaintiff's standing in opposing the Rule 23 motion.  However, Sterling did note that the United States Supreme Court was reviewing the Ninth Circuit holding.  Sterling also explained that, if the Ninth Circuit were reversed, then this Court may need to

STERLING INFOSYSTEMS, INC.'S RULE 12(b)(1) MOTION TO DISMISS COUNT III OF
PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

1   reconsider any ruling granting class certification.  (ECF 81 at 25 n.9.)[3]

2       As this Court has not ruled on the pending Rule 23 motion, no such reconsideration is

3   necessary yet.  Nor would such reconsideration ever be necessary if the Court grants this motion,

4   because the only asserted class claims at issue against Sterling will be dismissed.  Moreover, this

5   Court has an obligation to assess Plaintiff's Article III standing – and thus its own jurisdiction –

6   before reaching any other issues.  *See DaimlerChrysler*, 547 U.S. at 340-42.  Therefore, Sterling

7   respectfully requests that this Court decide this Rule 12(b)(1) motion to dismiss before ruling on

8   Plaintiff's Rule 23 motion.

9       **C.    Under *Spokeo*, Plaintiff Must Prove A Concrete And Particularized
            Injury-In-Fact Caused By The Alleged FCRA Violation To Establish Her
10           Standing.**

11      "Standing to sue is a doctrine rooted in the traditional understanding of a case or

12  controversy."  *Spokeo, Inc.*, 136 S. Ct. at 1547.  Plaintiff here must show that she "(1) suffered an

13  injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is

14  likely to be redressed by a favorable judicial decision."  *Id.* (quotation marks and ellipsis omitted).

15  "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally

16  protected interest that is concrete and particularized and actual or imminent."  *Id.* at 1548

17  (quotation marks omitted).

18      As in this case, the plaintiff in *Spokeo* alleged that a consumer reporting agency had violated

19  the FCRA.  The Ninth Circuit in *Spokeo* had "concluded that Robins' alleged violations of his

20  statutory rights were sufficient to satisfy the injury-in-fact requirement of Article III."  *Id.* at 1546.

21  But the Supreme Court reversed, holding that "Article III standing requires a concrete injury even

22  in the context of a statutory violation."  *Id.* at 1549.  Therefore, a plaintiff "could not, for example,

23  allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact

24  requirement."  *Id.* at 1549.  Because the Ninth Circuit failed to perform a full analysis of the

25  injury-in-fact requirement, the Supreme Court vacated the decision below and remanded in order

26  for the Ninth Circuit to perform a complete analysis of the plaintiff's standing.  *Id.* at 1550.

27  _____

28  [3] Asurion separately argued that this Court should stay ruling on Plaintiff's motion until the
    Supreme Court issued its decision in *Spokeo*.  (ECF 79 at 10-15.)

A similar analysis must now be performed by this Court, to determine whether Plaintiff here possesses standing to prosecute her Section 1681b(b)(3) class claims.

### D.   Plaintiff Did Not Suffer An Injury-In-Fact Caused By The Text Of The Notice Sent By Sterling Because She Never Read That Notice.

One theory underlying Plaintiff's Section 1681b(b)(3) claim is based on the text of the pre-adverse action notice that Sterling mailed to her on Asurion's behalf. (*See supra* at 1-2.) As noted above, for purposes of Section 1681b(b)(3), the adverse action occurs when the adverse hiring decision is communicated to the applicant. (*See supra* at 2-4.) According to Plaintiff, the notice sent by Sterling includes unspecified language "that a reasonable person under the circumstances might view as indicating that a decision has already occurred." (ECF 96 at 7; *see also* ECF 65 at 21 (notice contains "language that makes it appear that the adverse decision has already been made").) Therefore, Plaintiff contends that the notice is an "adverse action in the eyes of the recipient." (ECF 96 at 7 n.2.) Accordingly, in Plaintiff's view, "the violation of Section 1681b(b)(3)(A) occurred when Sterling sent a 'pre-adverse' action letter." (ECF 81-8 at 4 (Pl.'s Resp. to Sterling Interrog. 6).)

However, because she never read the notice sent by Sterling, Plaintiff admittedly did not suffer a "concrete and particularized" injury-in-fact that was caused by this purported violation. (*See supra* at 5.) For Article III standing, the requisite injury-in-fact must "be 'particularized,' i.e., it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 136 S.Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1). In a class action, the named plaintiff "'"must allege and show that they personally have been injured, not that injury has been suffered by other unidentified members of the class."'" *Spokeo*, 136 S.Ct. at 1547 n.6 (quoting *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 40, n. 20 (1976) (quoting *Warth v. Seldin,* 422 U.S. 490, 502 (1975))). Further, the injury must be concrete, "that is, it must actually exist," i.e., it must be "'real,' and not 'abstract.'" *Spokeo*, 136 S.Ct. at 1548 (citation omitted).

Here, Plaintiff suffered no concrete and particularized injury because she never read the notice. Therefore, she had no opportunity to interpret the notice as indicating that an employment decision had already been made by Asurion. Moreover, even if Plaintiff had read the

1  notice, she would not have interpreted it as a communication that she would not be hired because

2  Plaintiff testified that Asurion communicated that decision to her by both phone and email before

3  Sterling ever sent the notice.  (*See supra* at 5.)  Therefore, any claimed harm by Plaintiff is, at best,

4  the type of "abstract" harm that *Spokeo* held cannot constitute an injury-in-fact.

5        Notably, following the United States Supreme Court decided *Spokeo*, a district court within

6  the Ninth Circuit confronted a nearly identical issue.  There, a plaintiff claimed that the text of a

7  letter violated the Fair Debt Collection Practices Act.  However, the plaintiff never actually

8  received the offending letter in the mail, and therefore could not establish the injury-in-fact

9  required for Article III standing.

10            The fact that the plaintiff was completely unaware of the letter until it
11            was discovered in litigation, is fatal to Tourgeman's requirement that
            he demonstrate he had concrete harm resulting from the violation.  A
12            risk of harm that could have hypothetically been caused by a letter
            that was never received is too conjectural to be concrete.
13            Accordingly, the Court finds that Tourgeman lacks standing to
            pursue his claims regarding the Nelson & Kennard letter.
14

15  *Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-CV-1392 CAB (NLS), 2016 WL 3919633, at *2 (S.D. Cal.

16  June 16, 2016) (emphasis added) (footnote omitted).  Plaintiff's situation here is no different, and

17  this Court should similarly dismiss Count III for lack of Article III standing.

18      **E.    Plaintiff Did Not Suffer An Injury-In-Fact Caused By The Claimed
            Procedural Violation Because She Could Not Have Disputed The Accurate**
19      **Information Reported To Asurion By Sterling.**

20        Plaintiff's other Section 1681b(b)(3) theory is premised upon her contention that Sterling

21  rating her pending felony charges as "red" and communicating that information to Asurion along

22  with the record itself constituted an adverse action, i.e., a final decision not to hire Plaintiff.  (ECF

23  81-8 at 4 (Pl.'s Resp. to Sterling Interrog. 6).)  According to Plaintiff, Sterling's failure to send a

24  pre-adverse action notice deprived her of the opportunity to dispute the report before it was

25  considered by Asurion.  (*See supra* at 7; *see also* ECF 96 at 6-7.)  However, the purported harm does

26  not satisfy the injury-in-fact requirement reaffirmed by *Spokeo*.

27        The United States Supreme Court explained that a "violation of one of the FCRA's

28  procedural requirements may result in no harm," i.e., no concrete injury-in-fact.  *Spokeo*, 136 S. Ct.

STERLING INFOSYSTEMS, INC.'S RULE 12(b)(1) MOTION TO DISMISS COUNT III OF
PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

1  at 1550.  The Supreme Court identified the harm that the FCRA procedures at issue were designed

2  to avoid as part of the analysis of whether an alleged FCRA violation caused the requisite concrete

3  harm.  *Spokeo*, 136 S. Ct. at 1550.

4         Notably, Plaintiff here has already readily conceded, when describing her § 1681b(b)(3)

5  claim against Asurion, "the procedural nature of Plaintiff's claims."  (ECF 87 at 4.)  The legislative

6  history of § 1681b(b)(3), as well as court decisions interpreting it, are in accord with Plaintiff's

7  characterization of the claim.  As relevant legislative history and caselaw demonstrate, the purpose

8  of Section 1681b(b)(3) is to provide a procedure to allow applicants to dispute inaccurate

9  information on background reports before a potential employer makes a final adverse

10  employment decision.  (*See supra* at 3-4.)  Again, Plaintiff agrees with this characterization of

11  statutory purpose.  (ECF 96 at 6-7 (purpose of the notice that Sterling allegedly failed to provide is

12  "to give applicants the opportunity to change the employer's mind with respect to the current job

13  opportunity") (citing *Magallon v. Robert Half Int'l, Inc.*, No. 6:13-cv-01478-AA, 2015 WL 8773898, at

14  *4 (D. Or. Nov. 10, 2015)).)

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STERLING INFOSYSTEMS, INC.'S RULE 12(b)(1) MOTION TO DISMISS COUNT III OF
PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

Overall, even if Sterling had sent Plaintiff a pre-adverse action notice before reporting the pending charges to Asurion, the result of her application would have been exactly the same. Regardless of Sterling's actions, insurance company Asurion does not hire applicants (like Plaintiff) with pending felony fraud charges.  (ECF 79 at 6 (discussing legal prohibitions on insurance companies hiring applicants with certain types of criminal records).)  Therefore, Sterling's conduct did not cause Plaintiff any concrete, i.e., real, harm.

In a factually analogous case, an employee did not disclose her criminal record to her employer.  When her criminal history was revealed, she was fired without benefit of the pre-adverse action notice procedures.  However, because the termination was a foregone conclusion, regardless of whether the employer followed the FCRA's pre-adverse action notice procedures, the court dismissed the plaintiff's FCRA claim.

> Wal-Mart fired Vlasek because she was a registered sex-offender as a result of her criminal conviction for sexual assault of a minor.  Vlasek does not dispute the accuracy of the information about her criminal history contained in the report.  She concedes that she would have been fired whether or not she was provided with a copy of the report.  Vlasek cannot recover under section 1681o because she has not suffered actual damages from the failure to receive a copy of the FCRA report.

*Vlasek v. Wal-Mart Stores, Inc.*, No. H-0700386, 2008 WL 2937760, at *6 (S.D. Tex. July 22, 2008) (record citations omitted) (emphasis added).  The issue there was not Article III standing, but whether the plaintiff suffered the actual harm necessary to maintain a claim for a negligent FCRA violation.  However, the decision affirms the harm that Congress sought to avoid in requiring pre-adverse action notice under Section 1681b(b)(3) in certain circumstances.  Therefore, Count III of the pending complaint should be dismissed due to Plaintiff's lack of Article III standing because she suffered no injury-in-fact from the alleged FCRA violation.

## IV.    CONCLUSION

Wherefore, for the foregoing reasons, Sterling respectfully requests that this Court dismiss Count III of Plaintiff's Amended Class Action Complaint (ECF 41) because Plaintiff lacks Article III standing to pursue the claims asserted by that Count.  Sterling also respectfully requests that

1  this Court deny Plaintiff's pending Rule 23 motion against Sterling (ECF 65) because the claims

2  she seeks to certify are no longer at issue in this suit.

3

4  Dated this 5th day of August, 2016.                    By:  /s/ Albert E. Hartmann

5  David D. Garner                                        Michael O'Neil (*pro hac vice*)

6  Justin Henderson                                       Albert E. Hartmann (*pro hac vice*)
   LEWIS ROCA ROTHGERBER                                  REED SMITH LLP

7  CHRISTIE LLP                                           10 South Wacker Drive
   Collier Center                                         40th Floor

8  201 E. Washington Street, Suite 1200                   Chicago, IL 60606-7507

9  Phoenix, Arizona 85004-2595                            312.207.1100
   602.262.5335                                           michael.oneil@reedsmith.com

10 dgarner@lrrc.com                                       ahartmann@reedsmith.com
   jhenderson@lrrc.com

11
                                                          *Counsel for Defendant*
12                                                        *Sterling Infosystems, Inc.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STERLING INFOSYSTEMS, INC.'S RULE 12(b)(1) MOTION TO DISMISS COUNT III OF
PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

**CERTIFICATE OF SERVICE**

I hereby certify that on **August 5, 2016**, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following counsel of record:

Russell S. Thompson
David McDevitt
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
rthompson@consumerlawinfo.com
dmcdevitt@consumerlawinfo.com

*Counsel for Plaintiff*

Joseph Harkins
Littler Mendelson, P.C.
1150 17th Street, NW, Suite 900
Washington, DC 20036
JHarkins@littler.com

Shawn Oller
Peter Christopher Prynkiewicz
Littler Mendelson, P.C.
Camelback Esplanade
2425 East Camelback Road, Suite 900
Phoenix, AZ 85016-4242
soller@littler.com
pprynkiewicz@littler.com

*Counsel for Defendant Asurion Insurance Services, Inc.*

/s/ Albert E. Hartmann
Albert E. Hartmann